UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CLABON R. LACEY                                          CIVIL ACTION

VERSUS

ARKEMA INC., ET AL.                            NO.: 3:10-cv-00669-BAJ-RLB

RULING AND ORDER

Before the Court are two motions filed by Plaintiff Clabon Lacey ("Lacey")
seeking to prevent the introduction of certain evidence at trial. **(Doc. 124 (Motion
and Incorporated Memorandum in Support of Plaintiff's Motion *In
Limine*); Doc. 131 (*Daubert* Motion to Exclude the Testimony and Opinions
of Defendants' Expert, Michael L. Hanks)).** Defendants B.A.G. Corp. and
International Specialty Lines Insurance Company (collectively, "Defendants")
generally oppose Lacey's efforts. (Doc. 138; Doc. 140; Doc. 142; Doc. 144).[1] Lacey
has not filed a response to Defendants' opposition memoranda.

The Court will consider each of Lacey's Motions in turn. Oral argument is
not necessary.

I. **Lacey's MOTION AND INCORPORATED MEMORANDUM IN
SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* (Doc. 124)**

First, the Court considers Lacey's Motion *in Limine* (Doc. 124), seeking an
order that prohibits Defendants "from using any remark, statement, question,
answer, inference, innuendo, document or testimony of any nature" related to: (1)

---

[1] Specifically, Defendants adopt the opposition memoranda of now-dismissed defendants Arkema,
Inc. and Insurance Company of the State of Pennsylvania. (Doc. 142; Doc. 144).

workers' compensation and disability benefits; (2) Lacey's use of marijuana; (3) Lacey's driving record; (4) Lacey's marriage; (5) the contents of a report created by the Occupational Health & Safety Administration (OSHA); and (6) changes to Lacey's workplace since the accident that prompted this litigation.  (Doc. 124 at p. 1).

### a. Uncontested Issues

As an initial matter, Defendants offer no objection, or only *limited* objection, to certain of Lacey's requests.  For example, Defendants state that they have "no intention of questioning or introducing any evidence about Lacey's 1991 ticket for having defective brakes and having an unsafe vehicle or about his 2002 ticket for having a fraudulent vehicle inspection certificate," provided that "Lacey's testimony does not 'open the door'" to such evidence.  (Doc. 140 at p. 11).  Defendants likewise indicate that they have "no intention" of asking Lacey about his marital status or current romantic relationship unless Lacey testifies that the accident underlying this cause of action "negatively impacted" his marriage.   (*Id.* at p. 22–23).  Accordingly, the Court GRANTS Lacey's request to exclude questioning and evidence on these issues, provided that Lacey does not himself open the door regarding these topics.

2

### b. *Lacey's History of Marijuana Use*

Next, Lacey seeks to exclude evidence of his use of marijuana.  This evidence includes: (1) records related to Lacey's June 6, 1983 conviction for distribution of marijuana, (Doc. 124 at p. 3); (2) records related to his May 31, 1996 conviction for possession of marijuana, (*id.* at p. 4); (3) evidence that Lacey failed a drug test administered by his employer Diamond Plastics by testing positive for marijuana less than one year before the workplace accident at issue here, (*id.* at p. 6); and (4) medical records indicating that since his workplace accident, Lacey has tested positive for marijuana on at least two occasions, (*id.* at pp. 6–7).  Defendants oppose Lacey's request to exclude this evidence, stating that it is indicative of "Lacey's long term marijuana use," and "bears directly on" contested issues related to: (1) Lacey's "claim for future lost wages," (Doc. 140 at p. 8); (2) Lacey's assertion that he has used marijuana since his accident "to help him sleep and for pain control," (*id.* at 9–10 (quoting Doc. 140-3 at p. 5 (Pain/Psychological Evaluation prepared by Dr. F. Charles Frey ("Frey Report")))); and (3) Defendants' defenses that Lacey is "malingering" and has "fail[ed] to mitigate his damages," (*id.* at p. 9).

#### i. Lacey's Convictions for Marijuana-Related Offenses

The Court agrees with Lacey that evidence of his past criminal convictions related to marijuana must be excluded.  First, contrary to Defendants' assertions, Lacey's convictions do *not* "bear[] directly on his claim for future lost wages."  (Doc.

3

140 at p. 8).  Under Louisiana law, "an award for future loss of wages and/or loss of earning capacity" requires the plaintiff to "present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident."  *Aisole v. Dean*, 574 So. 2d 1248, 1252 (La. 1991).  Lacey's prior criminal convictions are irrelevant to this inquiry.  Fed. R. Evid. 401.

Second, Lacey's convictions are hardly probative on the issue of whether Lacey is now a malingerer, given that they each involved conduct that occurred more than ten years prior to the accident at issue here, particularly in light of Lacey's *seven-year* employment history at Diamond Plastics in the intervening years between his convictions and the accident that prompted this litigation.  (Doc. 140 at pp. 8–9); Doc. 109-1 at ¶ 1 (Arkema's Statement of Uncontested Facts stating that "Diamond Plastics (a non-party) employed Lacey for seven years as a blender operator at its Plaquemine, Louisiana, chemical plant")).  Fed. R. Evid. 401.

Finally, although Federal Rule of Evidence ("Rule") 609 provides that such convictions may be used in certain circumstances to impeach—such as if Lacey were to take the stand and testify that he has only *ever* smoked marijuana "to help him sleep and for pain control"—it also states that where the conviction is more than ten years old, "its probative value, supported by specific facts and circumstances, [must] substantially outweigh[] its prejudicial effect."  Fed. R. Evid. 609(b)(1).  Defendants

4

have not even *attempted* to satisfy this standard.  Accordingly, Lacey's request to exclude evidence of his criminal convictions is GRANTED.

ii.  <u>Lacey's Pre-Accident Drug Test</u>

Turning to the admissibility of Lacey's failed pre-accident drug test, the Court again rejects Defendants' assertion that this evidence is somehow relevant to Lacey's claim "for future lost wages" because it indicates Lacey's "[in]ability to secure and maintain employment." (Doc. 140 at pp. 8–9).  As stated, an award for future loss of wages is a function of medical evidence proving "a residual disability causally related to the accident." *Aisole*, 574 So. 2d at 1252.  That Lacey tested positive for marijuana prior to his accident is, again, irrelevant to this inquiry. Fed. R. Evid. 401.

Likewise, this evidence will not be admitted to show that Lacey is a malingerer because, again, this positive test occurred prior to Lacey's accident, in the midst of a seven-year employment record. *Id.*

On the other hand, evidence that Lacey tested positive for marijuana *prior* to his accident would certainly undermine any testimony to the effect that Lacey has *only* used marijuana *since* his accident.  Accordingly, *if* Lacey takes this position at trial, the Court will allow Defendants to question him regarding his positive drug test on cross-examination.  Fed. R. Evid. 608(b).

5

iii.   Lacey's Post-Accident Marijuana Use

Whether Lacey's *post*-accident marijuana use is relevant and admissible is a different matter.   To repeat, "an award for future loss of wages and/or loss of earning capacity [requires] a plaintiff [to] present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident."   *Aisole*, 574 So. 2d at 1252.   Thus, to the extent that Lacey's claimed "residual disability" could *also* be explained by marijuana use, Lacey's positive tests are relevant.   Fed. R. Evid. 401.   Further, the Court cannot say that these tests are so unfairly prejudicial as to be inadmissible.   Fed. R. Evid. 403.   Accordingly, this evidence will be admitted to the extent Defendants can show a connection between Lacey's "residual disability" and the impact of his marijuana use.

Likewise, this evidence will be admitted to the extent that it helps form the basis of a medical opinion that Lacey is a malingerer.   *See Caston v. Combined Ins. Co. of Am.*, 308 So. 2d 287, 289 (La. Ct. App. 1975) ("[I]t is well settled that a workmen's compensation claimant will not be deemed a malingerer in the absence of conclusive proof to the contrary.").

c.   *"Collateral Source" Benefits*

Next, Lacey seeks an order prohibiting any mention of his entitlement to: (1) "*medical bills [and] weekly benefits* paid by Travelers Property Casualty Company of America, Diamond Plastic's workers' compensation insurer, both now and in the

6

future," (Doc. 124 at p. 2 (emphasis in original)); (2) "disability payments from Prudential Insurance Company of America under a disability policy paid for by Mr. Lacey," (*id.* at p. 3); and (3) "Social Security disability benefits," (*id.*). Lacey argues that these benefits are each "sources of compensation that are independent of (or collateral to) the tortfeasor," and, accordingly, are barred by the "collateral source rule." (*Id.* at p. 2). Defendants respond that evidence of these collateral benefits is admissible for limited purposes, such as to show "Lacey's credibility, 'malingering,' and failure to mitigate damages." (Doc. 140 at p. 2).

The U.S. Fifth Circuit Court of Appeals has explained the "collateral source rule" as follows:

> The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor. Married to this substantive rule is an evidentiary rule that proscribes introduction of evidence of collateral benefits out of a concern that such evidence might prejudice the jury.

*Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994). The Fifth Circuit has also indicated, however, that the collateral source rule is not absolute. *Simmons v. Hoegh Lines*, 784 F.2d 1234, 1237 (5th Cir. 1986). Specifically, the Fifth Circuit has stated: "[i]f there is little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given, then receipt of compensation benefits may be admissible for the limited purpose of proving [matters other than

7

liability or damages]." *Id.*; *e.g., Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1169 (5th Cir. 1990) (holding that trial judge properly allowed defendant's counsel to question plaintiff regarding "the termination of compensation benefits" where "plaintiff opened the door" and the issue was relevant to defendant's "mitigation of damage defense").

As an initial matter, the Court is satisfied that each of the benefits identified by Lacey is a collateral source because they are payments received from an independent source other than Defendants. *See Davis*, 18 F.3d at 1243. Accordingly, the introduction of evidence regarding these benefits is presumptively "improper and prejudicial because it may adversely affect the jury's deliberations or violate the collateral source rule." *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1168 (5th Cir. 1990).

Further, the Court is *not* persuaded by Defendants' insistence that "evidence of Lacey's continuous receipt of benefits nearly to or equal to his net salary while employed at Diamond Plastics is admissible to show Lacey's lack of motivation to return to work." (Doc. 140 at p. 4). Indeed, to the extent that Defendants seek to introduce evidence of collateral source benefits to show that Lacey is "malingering" and/or has "fail[ed] to mitigate [his] damages," (*id.* at p. 2), the law is quite clear that "there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." *Eichel*

8

*v. N.Y. Cent. R. Co.*, 375 U.S. 253, 255 (1963).[2]  For the same reason, the Court will *not* allow such evidence for impeachment purposes on the issue of "Lacey's claimed inability to work."  (Doc. 140 at p. 5).  The Court will reserve ruling, however, as to whether this evidence may be admissible on other issues related to Lacey's credibility.

### d. Post-Accident OSHA Report

Next, Lacey requests that the Court exclude certain evidence related to OSHA's investigation into the accident underlying this cause of action, specifically: (1) "the Citation and Notification of Penalty . . . issued by OSHA to Diamond Plastics Corporation on December 3, 2009"; and (2) "the Settlement Agreement between Diamond Plastics and OSHA."  (Doc. 124 at p. 7).  Lacey argues that these documents contain inadmissible hearsay and, in any event, are "irrelevant and/or highly prejudicial."  (*Id.* at pp. 7–11).  Defendants respond that the *entire* OSHA file, including the Settlement Agreement and the Citation issued to Diamond

---

[2] The Court is not persuaded by Defendants' reliance on *Fruge v. Penrod Drilling Company*, 918 F.2d 1163 (5th Cir. 1990) for the broad proposition that "collateral source [benefits are] admissible to establish plaintiff's failure to mitigate his damages." (Doc. 140 at p. 2). *Fruge* involved a unique set of factual circumstances where the *termination* of plaintiff's collateral source benefits was relevant to the ultimate issue of whether the plaintiff "suffered from a psychotic condition . . . attribut[able] to [the defendant's] negligence." *See id.* at 1167–69.  In *Fruge*, where the issue was whether termination of benefits "created or exacerbated" plaintiff's psychotic condition, the Fifth Circuit determined that "[t]he trial judge properly allowed [defendant's] counsel . . . to address the issue" of collateral source benefits *after* plaintiff's attorney "made the first mention of workers' compensation" in his opening argument. *Id.* at 1168–69.  Simply put, the situation here is a far cry from that at issue in *Fruge*.

Plastics, are admissible under Rule 803(8), and, further, that this evidence is relevant and not unduly prejudicial.

### i. The Settlement Agreement

Rule 408 provides that settlement agreements such as the one at issue here are not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).  Accordingly, because Defendants have failed to put forward "another purpose" for the Settlement Agreement, Lacey's request to exclude the Settlement is GRANTED. *Id.* at 408(b); *see also Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir. 1976) ("Rule 408 codifies a trend in case law that permits cross-examination concerning a settlement for the purpose of impeachment.").[3]

### ii. The OSHA Citation

The OSHA Citation is clearly hearsay, Fed. R. Evid. 801, and, of course, hearsay is generally inadmissible. Fed. R. Evid. 802.  However, Rule 803 delineates exceptions to the rule against hearsay, regardless of whether the declarant is available as a witness. *See* Fed. R. Evid. 803.  Among Rule 803's exceptions is the Public Records exception, which, among other things, provides that "[a] record or statement of a public office" is admissible if:

---

[3] This conclusion is reinforced by the Settlement Agreement's inclusion of a provision stating: "Neither this settlement agreement nor any order of the Commission entered pursuant to this agreement shall be offered, used or admitted in evidence in any proceeding or litigation, whether civil or criminal, except for proceedings and matters brought by the United States Government." (Doc. 124-3 at p. 6).

(A) it sets out:

. . .

(ii) a matter observed while under a legal duty to report . . .; or

(iii) in a civil case . . ., factual findings from a legally authorized investigation; *and*

(B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

*Id.* at 803(8) (emphasis added). The Fifth Circuit has instructed that "[o]pinions and conclusions, as well as facts, are covered by Rule 803(8)," and, further, that "evaluative reports are presumed *not* to be excluded under the hearsay rule unless there are indications of untrustworthiness." *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991) (emphasis added). Indications of untrustworthiness include: "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems." *Id.*

Upon review, the Court determines that the OSHA Citation is *not* a public record within the meaning of Rule 803(8). Ultimately, this conclusion hinges on the Court's concerns regarding the trustworthiness of the information contained in the Citation. Certainly the Court accepts OSHA as a trustworthy "source of information." Fed. R. Evid. 803(8)(B). However, "other circumstances indicate a lack of trustworthiness." *Id.* In particular, the Citation itself states: "Issuance of

11

this Citation does *not* constitute a finding that a violation of the Act has occurred *unless* there is a failure to contest as provided for in the Act *or*, if contested, *unless* this Citation is affirmed by the Review Commission or a court." (Doc. 124-4 at p. 1 (emphasis added)). The Citation further provides: "You have the right to *contest* this Citation and Notification of Penalty." (*Id.* at p. 2 (emphasis added)).

Each of these statements implicates "factors which are helpful in determining trustworthiness." *Moss*, 933 F.2d at 1305. First, they suggest that the "official" that issued the citation is *not* assumed to have "special skill or expertise" because the citation is subject to further administrative and/or judicial review; second, they indicate that "a hearing was [not] held," at any level; and, third, they suggest a sensitivity to "possible motivational problems"—such as bias on the part of the inspector—by providing for due process through further, independent review. *See Moss*, 933 F.2d at 1305.

Accordingly, the OSHA Citation is not admissible under Rule 803(8). And because Defendants have failed to advance any other basis for admitting the Citation, Lacey's request to exclude the Citation is also GRANTED.

### iii.  The Remaining Items in the OSHA File

Defendants invite the Court to rule that "the entire OSHA file, including the Citation and Settlement Agreement, is admissible under the 'public records and reports' exception to the hearsay rule." (Doc. 140 at p. 14). The Court has already

12

explained its position regarding the admissibility of the Citation and the Settlement Agreement, *supra*. The Court declines Defendants' invitation to determine that the remainder of the "OSHA file"—whatever it may contain—is admissible. The Court will determine the admissibility of such additional items contained in the OSHA file at a later time, as necessary.

### e. *Subsequent Remedial Measures*

Finally, Lacey's Motion *in Limine* seeks to exclude evidence of subsequent remedial measures implemented by Diamond Plastics following the accident. These measures include implementation of: (1) a "written house keeping program and fire prevention program"; (2) an "amended . . . hazard communications program"; (3) programs to "train[] . . . employees to understand these new policies"; and (4) certain structural improvements which "create a safer environment for . . . employees." (Doc. 124 at p. 12). Lacey insists that "Federal Rule of Evidence 407 prohibits admission of this evidence at trial." *Id.* Defendants respond that "Rule 407 does not apply to subsequent remedial measures taken by a non-party, here Diamond Plastics." (Doc. 140 at p. 24).

Rule 407 states:

When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:

· negligence;

13

- culpable conduct;

- a defect in a product or its design; or

- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407. In considering the applicability of Rule 407, the Fifth Circuit has consistently stated that "neither the text of [R]ule 407 nor the policy underlying it excludes evidence of subsequent repairs made by someone other than the defendant." *Koonce v. Quaker Safety Products & Mfg. Co.*, 798 F.2d 700, 719–20 (5th Cir. 1986) (*quoting Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1983)).

Here, Lacey specifically seeks to exclude "evidence showing subsequent remedial measures taken by Diamond Plastics." (Doc. 124 at p. 11). Diamond Plastics, however, is *not* a party to this litigation. Accordingly, Rule 407 does *not* provide a basis for excluding such evidence. *Koonce*, 798 F.2d at 719–20. And because Lacey has not suggested any other basis for excluding this evidence, Lacey's request is DENIED.

14

II. **Lacey's *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF DEFENDANTS' EXPERT, MICHAEL L. HANKS (Doc. 131)**

The Court now turns to Lacey's motion to exclude the testimony of Defendants' expert Michael L. Hanks (Doc. 131). At the outset, the Court notes that Lacey's motion relies in significant part on an exhibit—specifically a disc of "video excerpts"—that has *not* been filed into the record. (*See* Doc. 131-1 at pp. 3–4 & n.5; Doc. 131-8). Defendants' opposition likewise relies on video exhibits that have *not* been filed into the record. (*See* Doc. 138 at pp. 10–11; Doc. 138-7).[4] Further, Lacey's motion references "the deposition of Dr. Hanks," which also is *not* included as an exhibit to Lacey's motion, due to a discrepancy between the deadline for filing motions *in limine* and "the discovery cut-off." (*See* Doc. 131-1 at p. 2).

Lacking access to exhibits relied on by each side, the Court is hesitant to rule on the merits of Lacey's request. Accordingly, the Court will provisionally DENY Lacey's motion, and allow Lacey one *final* opportunity to renew his request, with the understanding that any renewed motion shall be accompanied by *all* exhibits necessary to rule on the merits.

---

[4] Recently, the Court granted the parties respective motions to "conventionally file" these video exhibits with the Clerk of Court. (Doc. 168). The Court's Order directed the parties to file their respective exhibits by 5:00 p.m., Monday, March 24, 2014. (*Id.* at pp. 1–2). To date, neither party has filed its video exhibits.

15

III.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Lacey's **MOTION *IN LIMINE*** (Doc. 124) is **GRANTED IN PART and DENIED IN PART,** consistent with this Order.

**IT IS FURTHER ORDERED** that Lacey's ***DAUBERT* MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF DEFENDANTS' EXPERT, MICHAEL L. HANKS** (Doc. 131) is **DENIED WITHOUT PREJUDICE** to Lacey's right to re-file ***no later than April 14, 2014.*** If he chooses to re-file his *Daubert* Motion, Lacey ***shall include*** all relevant exhibits with that Motion. As necessary, Lacey shall conventionally file with the Clerk of Court any relevant exhibits ***no later than 5:00 p.m., April 14, 2014.***

**IT IS FURTHER ORDERED** that Defendants' memorandum in opposition to Lacey's re-filed *Daubert* Motion, if any, shall be filed within twenty-one days of Lacey's submission, pursuant to Local Rule 7.4. As necessary, Defendants' shall also conventionally file with the Clerk of Court any relevant exhibits on the ***same date*** that they file their opposition memorandum.

Baton Rouge, Louisiana, this 31ˢᵗ day of March, 2014.

_____

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16